IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL COLELLA individually and on
behalf of all others similarly situated,

        Plaintiff,

v.

UNIVERSITY OF PITTSBURGH and DOES 1
THROUGH 10 inclusive,

        Defendants.

08cv0129
**ELECTRONICALLY FILED**

## MEMORANDUM OPINION

**I.    Introduction.**

Before the Court are defendant University of Pittsburgh's Motion to Vacate Preliminary Approval Order and for Entry of Judgment (doc. no. 14) and plaintiff Michael Colella's Motion for Final Approval of Class Action Settlement (doc. no. 22). For the reasons to follow, the Court will deny defendant's Motion to Vacate and grant plaintiff's Motion for Final Approval of Class Action Settlement.

**II.    Background.**

**1. The Complaint.**

Plaintiff Collela filed, in his own right and on behalf of a putative class, a complaint alleging that the University of Pittsburgh and its employees repeatedly and willfully violated the Fair and Accurate Credit Transaction Act ("FACTA"), codified as relevant to this action at 15 U.S.C. § 1681c(g), and "failed to protect Plaintiff and others similarly situated against identity theft and credit card and debit card fraud by continuing to print more than the last five digits of the card number and/or the expiration date on receipts provided to debit card and credit card

cardholders transacting business with Defendants." Complaint, ¶ 3. The Complaint seeks "on behalf of himself and the class, statutory damages, punitive damages, costs and attorneys fees, all of which are expressly made available by statute . . . ." Complaint, ¶ 5. Plaintiff alleges that although Defendant had actual knowledge of FACTA's truncation requirements, "specifically including the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale and was provided with notice of these obligations by trade associations" such as Visa, Complaint, ¶ 21, it failed to comply with FACTA from 2005 through 2008 and, in January 2008, gave plaintiff COLELLA an electronically printed receipt on which Defendant had printed the expiration date of Plaintiff's credit or debit card. Complaint, ¶54. The Complaint also sets forth allegations as to why the case is appropriate for class action pursuant to Fed.R.Civ.P. 23.

The parties were directed to participate in this Court's Alternative Dispute Resolution Program. (doc. no. 2). Before completion of ADR and before defendant had filed an answer to the Complaint, this Court was notified that the parties had agreed to settle the case, subject, of course, to this Court's obligation to review any proposed class action settlement for reasonableness, adequacy and fairness to the absent class members under Fed.R.Civ.P. 23(e).

**2. The Settlement Agreement/ Joint Motion for Court Approval.**

On May 12, 2008, this Court entered an Order (doc. no. 13) granting the Joint Motion for Preliminary Approval of Class Action Settlement (doc. no. 11), filed jointly by plaintiff Colella, in his own right and as representative of a class of plaintiffs, and by defendant University of Pittsburgh. The detailed and comprehensive Class Action Settlement Agreement ("Agreement"), executed by the parties on or around May 9, 2008, was attached to the Joint Motion as Exhibit 1.

It defined (at section IV. 1.13) the settling class as follows:

> All current and former University of Pittsburgh students who (i) purchased sporting events tickets via the Internet between December 4, 2006 and January 31, 2008; and (ii) received an electronic receipt or receipts at the point of sale or transaction which displayed (a) more than the last five digits of the student's credit card or debit card and/or (b) the expiration date of the student's credit card number.

Agreement, Exhibit 1 to Joint Motion (doc. no. 11-2 at 4 of 38).

The settlement set forth the consideration to each qualifying class member as one ticket having a face value of $10 to one of two University of Pittsburgh Panthers football games in the 2008 football season, and the consideration for the University to enter into the Agreement was that all members of the putative class would release any and all known and unknown claims. *Id*. at §§ 2.1.1 and 1.26

### 3. Court Order Granting Preliminary Approval.

The Court's Order Granting Preliminary Approval of Proposed Class Action Settlement, Directing the Dissemination of Notice and Scheduling a Final Settlement Hearing (doc. no. 13) stated, in most relevant part:

> The Court has considered the Class Action Settlement Agreement and its exhibits, the joint motion of the Settling Parties for an order preliminarily approving a class action settlement, directing the dissemination of notice and setting a final settlement hearing, and all other papers filed in this action. The matter having been submitted and good cause appearing therefore:
>
> The Court finds as follows:
>
> 1. All defined terms contained herein shall have the same meanings as set forth in the Class Action Settlement Agreement executed by the Settling Parties and filed with this Court (the "Settlement Agreement");
>
> 2. The Class Representative and the University Releasees, through their counsel of record in the Litigation, have reached an agreement to settle all claims

in the Litigation;

3. The Court preliminarily concludes that, for the purposes of approving this settlement only and for no other purpose and with no other effect on the Litigation, should the proposed Settlement Agreement not ultimately be approved or should the Effective Date not occur, the proposed Rule 23 Class likely meets the requirements for certification under Rule 23 of the Federal Rules of Civil Procedure: . . . ;

4. The moving parties also have presented to the Court for review a Class Action Settlement Agreement. The Settlement Agreement proposes a Settlement that is within the range of reasonableness and meets the requirements for preliminary approval; and

5. The moving parties have presented to the Court for review a plan to provide notice to the proposed Class of the terms of the settlement and the various options the Class has, including, among other things, the option for Class Members to opt-out of the class action; the option to be represented by counsel of their choosing and to object to the proposed settlement; and/or the option to become a Participating Claimant. The notice will be disseminated to the proposed Class consistent with the Settlement Agreement. . . .

Good cause appearing therefore, IT IS HEREBY ORDERED that:

1. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Action Settlement Agreement is preliminarily approved;

2. Notice of the proposed settlement and the rights of Class Members to opt in and/or out of the settlement and/or to become a Participating Claimant shall be given by email and direct mail consistent with the terms of the Settlement Agreement by May 28, 2008.

3. A hearing shall be held before this Court on July 23, 2008 at 8:00 am, Courtroom 7C ,United States Post Office & Courthouse, Seventh Avenue and Grant Street, Pittsburgh, Pennsylvania, 15219, to consider whether the settlement should be given final approval by the Court:

(a) Written objections by Class Members to the proposed settlement will be considered if received by Class Counsel on or before the Notice Response Deadline;

(b) At the Settlement Hearing, Class Members may be heard orally in support of or, if they have timely submitted written objections, in opposition to

the settlement;

>   (c) Class Counsel and counsel for the University Releasees should be prepared at the hearing to respond to objections filed by Class Members and to provide other information as appropriate, bearing on whether or not the settlement should be approved; and

>   4. In the event that the Effective Date occurs, all Class Members will be deemed to have forever released and discharged the Released Claims. In the event that the Effective Date does not occur for any reason whatsoever, the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever.

Order of Court dated May 12, 2008 (doc. no. 13).

As required by the Agreement and Court Order, the Notices were sent out and, according to plaintiff's counsel (and undisputed by defendant's counsel), there have been no objections filed and only one person of the thousands of potential class members[1] wished to be excluded from the class.

**4. University of Pittsburgh's Motion to Vacate.**

On July 2, 2008, defendant University of Pittsburgh filed a Motion to Vacate Preliminary Approval Order and for Entry of Judgment (doc. no. 14) on the grounds that Congress had amended the life out of plaintiff's class action suit for willful violation of the truncation requirements of FACTA, 15 U.S.C. 1681n, by its clarifying amendment of June 3, 2008, which states in pertinent part:

>   (d) Clarification of willful noncompliance
>
>   For the purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt *shall not be in*

---

[1] The parties agree that there were about 10,000 receipts for tickets with the offending information thereon printed during the class period.

*willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.*

15 U.S.C. § 1681n, as amended by the Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, § 3(a), June 3, 2008, 122 Stat. 1566 (emphasis added).

The University's argument for the judicial dissolution of its Agreement with plaintiffs is threefold: (i) plaintiff and similarly situated persons no longer have a cause of action; (ii) the "proposed settlement" is "defective for failure of consideration" because the University would receive nothing in return for its payments to the class and to counsel; and (iii) given the first two considerations, the "proposed settlement cannot be deemed 'fair, adequate and reasonable' under Fed.R.Civ.P. 23." Motion to Vacate (doc. no. 14) at 2, ¶ 3(a)-(c).

**5. Motion for Final Approval of Settlement.**

Plaintiff vigorously opposes the Motion to Vacate in His Amended Brief in Opposition (doc. no. 20), and also has filed a Motion for Final Approval of Class Action Settlement (doc. no. 22) with supporting brief. The University has filed an Objection (doc. no. 24) to plaintiff's Motion for Final Approval solely for the reasons set forth in its Motion to Vacate, but does not otherwise challenge or dispute any of plaintiff's representations made in his Motion for Final Approval.

**6. Fairness Hearing.**

On July 23, 2008, the Court convened the fairness hearing as scheduled, and after discussion with counsel, proceeded with the hearing, subject to defendant's Motion to Vacate and objection to final approval based on said motion. See Minute Entry (doc. no. 25). Other than its objection based on the FACTA amendment, defendant had no additional objections to

the Court's final approval of the settlement, and agreed with plaintiff's representations as to dissemination of the Notices required by the Agreement and this Court's Order, and the lack of any objections by any absent class members. Subject to defendant's objection to plaintiffs' Motion for Final Approval, this Court determined that the proposed settlement was fair and reasonable and in the best interests of the class, and finally "approved" said settlement unless the Court would grant defendant's Motion to Vacate, which was held in abeyance.

**III.     Legal Analysis.**

**A.     Validity and Enforceblity of Settlement Agreement.**

It is a long-standing principle that a voluntary settlement agreement may be binding upon the parties, irrespective of whether it was made in the presence of the Court. *Green v. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); see also *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997) (holding that a settlement agreement is binding despite the fact that it resulted from mediation instead of litigation). Moreover, a settlement agreement does not even need to be reduced to writing to be enforceable, so long as its material terms have been mutually agreed upon. See *Main Line Theatres, Inc. v. Paramount*, 298 F.2d 801, 804 (3d. Cir. 1962); see also *Good v. The Pennsylvania Railroad Co.*, 384 F.2d 989, 990 (3d Cir. 1967) (holding that a settlement agreement, entered into by duly authorized counsel, was "valid and binding despite the absence of any writing or formality").

Settlement agreements are interpreted as binding contracts and are governed by the ordinary principles of contract law. *In re Cendant Corp. Litig.*, 233 F.3d 188, 193 (3d Cir. 2000). There is a strong judicial policy in favor of the voluntary settlement of lawsuits. See *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d. Cir. 1982) (holding that voluntary settlement

agreements are "specifically enforceable and broadly interpreted"). As recently expressed by a colleague in the United States District Court of New Jersey:

> The [United States Court of Appeals for the] Third Circuit recognizes a strong public policy favoring settlements of disputes, the finality of judgments and the termination of litigation. See *American Iron & Steel Institute v. Environmental Protection Agency*, 560 F.2d 589 (3d Cir. 1977); *Pennwalt Corp. v. Plough, Inc.*, 676 F.2d 77, 80 (3d Cir.1982) . . . "Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should." *Pennwalt*, 676 F.2d at 80. . . .

*In re Nazi Era Cases Against German Defendants Litig.*, 236 F.R.D. 231, 241-42 (D.N.J. 2006) (numerous additional citations omitted). See also *Standard Steel, LLC v. Buckeye Energy, Inc.*, 2005 WL 2403636 *2 (W.D.Pa. 2005) (Conti, J.) ("Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts."), citing *D.R. by M.R.*, 109 F.3d at 901.

The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. ("In re GMC"),* 55 F.3d 768, 784 (3d Cir. 1995).

In light of the foregoing principles, there is no doubt that the parties, plaintiff COLELLA and the University of Pittsburgh, through capable and experienced counsel, negotiated, in good faith and at arm's length, a through and comprehensive written settlement agreement that not only set forth the *material* terms of the Agreement, it also detailed the *minutiae* of the parties' performance and expectations, and the legal consequences of the Agreement, leaving no stone unturned. The Agreement is a binding and enforceable agreement under general principles of

contract interpretation and, except for the reasons set forth in its Motion to Vacate, defendant does not suggest otherwise.

Thus, the Agreement is binding on both plaintiff and the University unless there is something in the Credit and Debit Card Receipt Clarification Act amending 15 U.S.C. §1681c(g) or inherent in the non-finality of class action settlements pending a district court's Rule 23 review and approval that permits or compels a court to disregard an otherwise binding and enforceable settlement agreement between the parties. After careful consideration of defendant's Motion to Vacate, the Credit and Debit Card Receipt Clarification Act, and this Court's obligations under Fed.R.Civ.P. 23, and mindful of the strong public policy and judicial preference for settlements, this Court finds no reason permitting, let alone compelling, a district court to disregard a valid, binding contract to settle the litigation.[2]

B.   **The Credit and Debit Card Receipt Clarification Act.**

The Credit and Debit Card Receipt Clarification Act set forth Congress's findings and purpose in amending the truncation cause of action under FACTA, including that technical violations regarding the truncation of expiration dates did not cause actual harm to customers where the credit or debit number was truncated as required by FACTA, and that, despite "repeatedly being denied class certification [but not, however, in district courts within the Third Circuit which have routinely approved settlements in similar class action lawsuits], the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of

---

[2] The Court is aware that a well-respected colleague on the United States District Court for the Western District of Pennsylvania has recently rendered a contrary decision. *Ehrheart v. Verizon Wireless*, Civil Action No. 07-1165 (W.D. Pa.) (Ambrose, C.J.). See Opinion and Order dated June 13, 2008 (doc. no. 38) and Order dated July 25, 2008 denying motion for reconsideration (doc. no. 50).

companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit." *Id*. at § 2(a)(5-7). By amending FACTA to provide that persons who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, but otherwise complied with the requirements of section 1681c(g), "shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt," Congress plainly eliminated the private cause of action based *solely* on failing to truncate the expiration date.

Congress also provided that the "amendment made by subsection (a) shall apply to any action, *other than an action which has become final*, that is brought for a violation of 605(g) of the Fair Credit Reporting Act to which such amendment applies without regard to whether such action is brought before or after the date of the enactment of this Act." *Id*. at § 3((b) (emphasis added).

Thus, had this clarifying amendment been enacted prior to the execution of the settlement agreement, the Court would no doubt have seen a motion to dismiss the complaint for failure to state a claim, and most likely would have granted such motion, at least to the extent that any plaintiff's claims may have been based *solely* on the failure to truncate the expiration dates and not also on failure to truncate the credit and debit card numbers in accordance with FACTA. (The Court notes that plaintiff's Complaint includes claims that defendant issued receipts which did not truncate credit and debit card numbers, and the settling class is defined as current and former University of Pittsburgh students who purchased sporting events tickets via the Internet in the class period and who received an electronic receipt at the point of sale or transaction "which displayed (a) more than the last five digits of the student's credit card or debit card *and/or* (b) the

expiration date of the student's credit card number.")

However, the Agreement unambiguously provides that defendant denies all wrongdoing and all of plaintiff's claims and contentions but that, in order to avoid protracted and expensive litigation, and taking into account the uncertainty and risks inherent in any litigation, the University determined it to be in its best interests to settle the case. Class Action Settlement Agreement, Exhibit 1 to Joint Motion (doc. no. 11-2) at Sec. III. Similarly, plaintiff agreed to release any and all claims known and unknown, and agreed that the settlement was not an admission that the University had violated FACTA. *Id*. at §§ 2.9.5 and 2.9.6.

Pursuant to the plain and unambiguous language of the Agreement and this Court's Order of May 12, 2008, the settlement cannot possibly be interpreted as a judicial determination or an admission by defendant that it had been "in willful noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt," and the Agreement is not predicated on such a determination or admission. To the contrary, the settlement was based on a mutual exchange of consideration following good faith, arm's length negotiations by sophisticated counsel, and the Agreement can *in no way* be deemed to be in violation of the Credit and Debit Card Receipt Clarification Act of 2007 or its amendment to 15 U.S.C. § 1681c(g) of FACTA.

Congress said nothing about whether parties to a litigation could mutually agree to settle litigation, and it is well recognized that changes in the law after settlement do not provide grounds for rescission of an otherwise binding settlement agreement. See *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002) (stipulation for settlement precluded corporation from contesting its underlying liability under Coal Industry Retiree Health Benefit Act, even though

intervening Supreme Court decision found Act unconstitutional).

*Biodiversity Assoc. v. Cables*, 357 F.3d 1152 (10th Cir. 2004), upon which defendant relies, is *sui generis* and offers no justification for judicially setting aside the Agreement in this case. In the *Biodiversity* case, Congress crafted narrow, compromise legislation to permit logging and other fire prevention measures in an area of the Black Hills National Forest in South Dakota. In a rider to an unrelated appropriations bill, Congress essentially enacted the terms of a modified agreement negotiated between the Forest Service and the Sierra Club and the Wilderness Society. See Supplemental Appropriations Act for Further Recovery From and Response to Terrorist Acts on the United States, Pub.L. No. 107-206, § 706, 116 Stat. 820, 864 (2002) (the "706 Rider" or "Rider").

However, the Rider, which was signed into law on August 2, 2002, required the Forest Service to take a variety of actions that violated the settlement agreement, see, e.g., *id*. §706(d)(5), 116 Stat. at 867, and explicitly prohibited judicial review of those actions, *id*. §706(j), 116 Stat. at 868. It also specifically referred to the settlement agreement, and stated that the agreement should continue in effect to the extent it was not preempted by the Rider. See *id*., 116 Stat. at 869. The United States Court of Appeals for the Tenth Circuit upheld Congress' power to override a settlement agreement affecting federal lands, and to limit judicial authority to consider actions by the Forest Service that might violate the settlement agreement.

By contrast, the Credit and Debit Card Receipt Clarification Act of 2007 is a clarifying amendment which merely eliminates a cause of action based solely on a person's failure to truncate expiration dates from credit and debit card receipts, and which does not purport to limit parties' ability to negotiate binding settlement agreements or judicial authority to enforce such

settlements of FACTA claims made before the effective date of the amendments. The Court finds that the Credit and Debit Card Receipt Clarification Act of 2007 offers no impediment to enforcement of the Agreement.

### C. Fed.R.Civ.P. 23(e) - District Court's Obligation to Absentee Class Members.

Rule 23(e) currently provides:

> (e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed.R.Civ.P. 23(e).

As the language of Rule 23(e) indicates, and as the commentary to the 2003 Amendments to Rule 23(3) explain, this subdivision was "amended to strengthen the process of reviewing proposed class-action settlements. Settlement may be a desirable means of resolving a class action. But court review and approval are *essential to assure adequate representation of class*

13

*members who have not participated in shaping the settlement*." (emphasis added). Indeed, the district court's obligations to protect absent class members and to ensure the fairness and adequacy of the settlement to those absentee class plaintiffs has been designated a "fiduciary" duty by the United States Court of Appeals for the Third Circuit. *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001), citing *In re GMC*, 55 F.3d at 784-85 (with judicial supervision of class actions, "there remains an overarching concern -- that absentees' interests are being resolved and quite possibly bound by the operation of res judicata even though most of the plaintiffs are not the real parties to the suit. . . . [T]he *court plays the important role of protector of the absentees' interests, in a sort of fiduciary capacity*, by approving appropriate representative plaintiffs and class counsel." (emphasis added)); *In re Community Bank of Northern Virginia*, 418 F.3d 277, 318 (3d Cir. 2005) ("We have gone so far as to deem the district judge a 'fiduciary' of the class." *In re Cendant Corp. Litig.*, 264 F.3d at 231.

In the related derivative action in the Cendant Corporation litigation, the Court of Appeals for the Third Circuit made clear that the "fiduciary obligation" of a district court reviewing proposed class action settlements runs to the absent class members, not to the defendant corporation which is represented in the class action. In the derivative action, *In re Cendant Corp. Litig.*, 264 F.3d 286 (3d Cir. 2001), the Court of Appeals stated as follows:

> We believe that the District Court correctly identified the applicable law --
> under Fed.R.Civ.P. 23(e), courts must determine whether the settlement is fair,
> reasonable, and adequate *to the class*. The *fiduciary duty to the class* exists
> because the very nature of the class action device prevents many who have claims
> from directly participating in the litigation process. See *In re GM Trucks*, 55 F.3d
> at 805 ("Rule 23(e) imposes on the trial judge the duty of protecting absentees.");
> see also 2 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 1.46, at
> 11-105 to 11-106 (3d ed. 1992) ("The court must be assured that the settlement
> secures an adequate advantage for the class in return for the surrender of litigation

rights against the defendants."). Deutch has not persuaded us that the court's fiduciary duty under Rule 23(e) should be extended to include defendant corporations even if they may be controlled by individuals who have conflicts of interest.

*In re Cendant Corp. Litig.*, 264 F.3d at 296 (emphasis added).

From the foregoing, it is certain that this Court's obligation to review and finally determine whether the settlement is fair and reasonable extends only to the absent class members, to whom the district court owes a fiduciary duty, not to the parties to the settlement negotiations and agreement. The Agreement was fully, fairly and finally executed by the parties and approved by the Court, with the caveat that the Court would determine whether it passed muster in terms of fairness, adequacy and reasonableness to the class members who did not participate in the negotiations and drafting of the Agreement. Absent a determination that the Agreement did not pass muster from the perspective of absent class members, the only contingency left open in the Agreement, it was and is binding on the parties.

**IV. Motion for Final Approval of Settlement Agreement.**

As noted, there have been no objections to the settlement by absent class members, nor has defendant lodged any objection to the only remaining matter before the Court, i.e., the fairness, adequacy and reasonableness of the settlement to the absent class members. The Court has carefully considered the Agreement with reference to the non-exhaustive nine *Girsh* factors. *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ((1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendant to withstand a greater judgment; (8) the range of

reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of the litigation). Courts in this district have routinely approved similar settlements of similar class action suits, including this Court. *Sinatra v. Coventry Restaurant Systems, Inc d/b/a Hyde Park Steak House*, Civil Action No. 07-445 (W.D. Pa.) (Schwab, J.); *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's Craft Center*, Civil Action No. 07-321 (W.D. Pa.) (Schwab, J.). See also *Palamara v. Kings Family Rest.*, 2008 WL 1818453 (W.D. Pa. 2008) (Lancaster, J.); *Reed v. Whole Enchilada, Inc. d/b/a big Burrito Rest. Group*, Civil Action No. 07-357 (W.D. Pa.) (Fischer, J.).

Viewed in this light, and mindful that if the Court would vacate its previous Order and effectively rescind the Agreement, absent class members would have no recovery given the inevitable motion to dismiss that would follow judicial rescission of the Agreement, the Court has no hesitancy in affirming the Agreement as being in the best interests of the class, and therefore in granting plaintiff's Motion for Final Approval.

An appropriate Order will follow.


                                                                              s/ Arthur J. Schwab
                                                                              Arthur J. Schwab
                                                                              United States District Judge


cc:     All Registered ECF Counsel and Parties